[No. 24600. *En Banc.* July 7, 1934.]

Rosie Locke *et al., Respondents,* v. Mike Andrasko, *as Executor, et al., Appellants.*[1]

[1]Reported in 34 P. (2d) 444.

*Henderson, Carnahan & Thompson,* for appellants.

*H. G.* and *Dix H. Rowland* and *W. E. Gwynn,* for respondents.

## ON REHEARING.

MITCHELL, J.—This case was heard by Department Two, and an opinion filed, 175 Wash. 123, 26 P. (2d) 1046. A rehearing has been granted, and the case reheard *En Banc.*

Frank and Barbara Chopeck were husband and wife. They had five children, as follows: Andrew, born in 1897; George, born in 1900; Anna (now Anna Brown), born in 1905; Rosie (now Rosie Locke), born in 1906; and Susie (now Susie Martin), born in 1909. The father, Frank Chopeck, prior to June 9, 1910, was killed in a coal mine, on account of which damages were paid by the coal mining company, sixteen hundred dollars of which was awarded to the children. To receive the money belonging to the children, their mother, Barbara, was on June 9, 1910, appointed and qualified as guardian of their estates. She received the money, and has never settled her account with the children or either of them as guardian or otherwise.

After the death of Frank Chopeck and prior to the appointment of Barbara as guardian of the estates of her children, she married Tom Kaperak. By order of the probate court, she and her husband were allowed to use fifteen hundred dollars of her children's money to buy the real property involved in this action, for which loan she and her husband, Tom Kaperak, gave their note in the sum of fifteen hundred dollars, dated April 4, 1912, payable seven years after date, interest at six per cent per annum, to be secured, and was

secured, by their mortgage on the real property purchased. Both note and mortgage were made payable to Mike Buchko as trustee for the children. The mortgage was duly recorded in the county auditor's office.

Two children were born of the marriage of Tom Kaperak and Barbara, namely: Mary Kaperak and Tom Kaperak, Jr.

A written satisfaction of the real estate mortgage, purporting to have been signed and acknowledged by Mike Buchko, trustee, was filed and recorded in the county auditor's office on March 1, 1921. Mike Buchko, the trustee, died thereafter (date not shown by the record, but prior to the commencement of this action), and no one has been appointed to succeed him as trustee.

About the years 1928 and 1929, a divorce action was pending between Tom Kaperak and Barbara, his wife, which resulted in a divorce in 1929. While the divorce action was pending, it appears that a property settlement, involving a considerable amount of real and personal property, was made between the parties by which the real property covered by the mortgage in question in this case was given to Tom Kaperak, who gave a mortgage upon it to one Marie Winjun upon which eight hundred dollars principal and ninety-six dollars interest were due at the date of the trial of this case. The property agreement between Kaperak and his wife was duly acknowledged by them before a notary public on November 13, 1928.

George and Andrew Chopeck and Anna Brown assigned all their interest in and to the mortgage involved in this action to Rosie Locke and Susie Martin, and thereupon on February 5, 1930, Rosie Locke and Susie Martin commenced this action against Tom Kaperak, Barbara Kaperak and Marie Winjun to set aside the satisfaction of the mortgage and to foreclose the

mortgage, alleging facts substantially as above recited, and further stating that the mortgage or any part of it had not been paid, and that plaintiffs were not aware of that fact until shortly before the commencement of the action.

After the commencement of the action, Tom Kaperak died testate, and Mike Andrasko was appointed and qualified as executor of his last will and testament, and was also appointed and qualified as the guardian of the person and estate of Tom Kaperak, Jr., and Barbara Kaperak was appointed and qualified as guardian of her minor child, Mary Kaperak.

Thereafter, the complaint was amended by adding Mike Andrasko as executor of the estate of Tom Kaperak, deceased, Mary Kaperak and Tom Kaperak, Jr., minors, and Barbara Kaperak as guardian of Mary Kaperak, a minor, and Mike Andrasko as guardian of Tom Kaperak, Jr., a minor, as additional parties defendant.

Mike Andrasko, as executor of the estate of Tom Kaperak, deceased, and as guardian of Tom Kaperak, Jr., a minor, and Tom Kaperak, Jr., answered the amended complaint by appropriate general denials, and affirmatively pled (1) the statute of limitations; (2) that no claim had been presented by the plaintiffs to the executor of the estate of Tom Kaperak, deceased, which was in the course of administration; and (3) that the plaintiffs were guilty of laches. A reply was filed, putting the affirmative defenses in issue.

Barbara Kaperak was served with summons and amended complaint, made no appearance whatever in the cause, and was duly adjudged to be in default, and, she not appearing as guardian for Mary Kaperak, a minor, the court appointed a guardian *ad litem* who

appeared for the minor during the trial to and including the entry of judgment.

Findings of fact and conclusions of law were entered in favor of the plaintiffs, upon which judgment was entered setting aside and cancelling the purported satisfaction of the mortgage by the trustee, foreclosing the mortgage and providing that the property be sold in the usual manner by the sheriff, subject to the mortgage held by the defendant Marie Winjun. Mike Andrasko, executor of the estate of Tom Kaperak, deceased, and as guardian of Tom Kaperak, Jr., a minor, and Tom Kaperak, Jr., have appealed from that portion of the judgment cancelling the discharge of the mortgage and directing a foreclosure of the mortgage.

On the appeal, the assignments are: (1) The court erred in making findings of fact and conclusions of law in favor of the respondents; (2) The court erred in setting aside the release of said mortgage; (3) The court erred in overruling appellants' motion for a new trial; and (4) The court erred in entering judgment in favor of respondents. These assignments are argued on behalf of the appellants by a general discussion of points that there was no evidence of non-payment of the mortgage; that the statute of limitations had run against the action at the time it was commenced; that no claim had been presented to the executor of the estate of Tom Kaperak within the period of time provided by the probate law, and that the plaintiffs were guilty of laches.

Mrs. Kaperak testified that neither she nor Tom Kaperak, the makers of the mortgage, had ever paid the mortgage or any part of it, principal or interest. A disinterested witness, who was present when Mr. and Mrs. Kaperak were dividing their property during the pendency of the divorce action, testified that

Mr. and Mrs. Kaperak discussed the "mortgage the children had on the property;" that Mr. Kaperak spoke of borrowing fifteen hundred dollars on the real property; that Mrs. Kàperak reminded him that the "kids" already had a mortgage on the property, and that Mr. Kaperak admitted it. This was a number of years after the date of the purported satisfaction of the mortgage of record.

Marie Winjun testified that, in the divorce settlement, Mr. Kaperak wanted fifteen hundred dollars, and that he came to her for it, and that she let him have it upon his giving her a mortgage on this property, after her attorney found that hers was a first mortgage, depending, of course, on the prior purported satisfaction of record of the mortgage to the trustee. Thus, to get money to pay his wife while the divorce troubles were going on, he impliedly led an innocent person to believe the mortgage for the benefit of his stepchildren had been paid when he knew it had not, and thereby procured the loan for which Marie Winjun was protected as an innocent mortgagee by the judgment in this case; and, while arranging a settlement with his wife, he admitted to a disinterested person, among others, that he knew the mortgage had not been paid.

The property settlement shows that Mr. Kaperak paid his wife fifteen hundred dollars in money. Respondents testified that their mother and stepfather had given them to understand from time to time that the mortgage to the trustee had not been paid, and that they never learned of the purported satisfaction of it until during the divorce proceedings or shortly after the property settlement between the parties to the divorce proceeding, which settlement was acknowledged by Mr. and Mrs. Kaperak about fifteen months prior to the commencement of the present action.

Each of the five children testified that he or she had never received anything on account of the mortgage. Some of them had borrowed money from their stepfather, which had been repaid, except one of them who had given him a mortgage to secure a loan, which mortgage was still outstanding, there being nothing in the record to show who the owner is or was at the date of the trial.

At first, the trial court expressed the view that there should be no recovery by the respondents, but, upon written briefs by the attorneys and further consideration of the evidence, a different conclusion was reached.

Counsel for appellants say that there was a failure to prove non-payment to the trustee, and that "the testimony went no further than to show that none of these children had received any money." That a fraud was perpetrated with respect to the recording of the purported satisfaction of the mortgage, was established without doubt, and the belief and conclusion that Tom Kaperak was connected with it is, in our opinion, inescapable. Mrs. Kaperak testified that she never paid the mortgage. Who else, other than Tom Kaperak, could have had any purpose in paying it or having it discharged of record fraudulently and without consideration? And the evidence is complete and unanswerable, not only that he did not pay it, but that he understood it had not been paid, and that, with knowledge of the false and fraudulent record, and upon the faith of that property, he borrowed money from an innocent party to use in his personal business affairs.

Among others, the trial court, upon evidence appearing to be strong and convincing, made and entered findings as follows:

"(10) That the plaintiffs above named, and the said George Chopeck, Andrew Chopeck and Anna Brown, believed and understood and were led to believe by

Barbara Kaperak and Tom Kaperak that said mortgage was still in force and effect and was a first and prior lien on the property herein described, . . . and were led to believe by Barbara Kaperak and Tom Kaperak that said mortgage and note herein referred to were in full force and effect and that said mortgage still is and was a prior lien on the property herein described and a valid subsisting mortgage thereon.

" (11) That in July, 1929, the plaintiffs and Andrew Chopeck, George Chopeck and Anna Chopeck discovered and learned for the first time that said mortgage had been satisfied of record by the trustee, Mike Buchko, which satisfaction was filed for record on March 1, 1921, in Volume 230, page 68, fee number 589291, records of mortgages of Pierce County, Washington.

" (12) That said mortgage was never paid nor any interest thereon; that Mike Buchko, trustee of said mortgage, was induced to satisfy the same without the same having been paid; that the sum represented by said mortgage and note and the interest thereon was never paid to the said Mike Buchko or at all, was never paid to the said plaintiffs or any of the wards of the guardian Barbara Kaperak, or to the said guardian, and that the same was fraudulently satisfied and canceled. . . .

" (18) That the said Mike Buchko had no right, power and authority as trustee or otherwise to release and satisfy said mortgage, without it having been paid, and that said satisfaction of mortgage is invalid, and void, and of no effect."

All of the appellants claim by, through or under Tom Kaperak. If he were in no way connected with the fraud, appellants would take the property free from the lien of the mortgage, there being no evidence that they or any of them had any knowledge of the fact that the mortgage was not actually paid; but, their predecessor being a party to the fraud and taking advantage of it to his pecuniary benefit, his successors are bound to the same extent that he would be, if alive, for

the purpose of reinstatement and foreclosure of the lien of the mortgage. All persons who knowingly participate in or aid in committing a breach of trust are responsible for the wrong, and may be compelled to replace the fund which they had been instrumental in diverting. *Duckett v. National Mechanics' Bank,* 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. 513. That equitable principle is applicable here.

The release of such a mortgage, in the absence of consideration or consent of the *cestui que* trust, is void, such is the rule in equity; and, while a subsequent innocent purchaser or encumbrancer will be protected, such is not the case with a party connected with the fraud.

In *Day v. Brenton,* 102 Iowa 482, 71 N. W. 538, 63 Am. St. 460, although an innocent purchaser was protected, the court, speaking on the subject particularly involved in the present case, said:

"It is no doubt true that Peter A. Johnson, the trustee, had no authority to release the deed of trust, except upon payment of the notes secured thereby; and it is conceded that, as between the parties, or persons having notice, a release executed by a trustee without authority of the *cestui que* trust, and without having received payment of the debt secured, does not discharge the lien. See Jones, Mortg. section 957; *Insurance Co. v. Eldredge,* 102 U. S. 545; *Williams v. Jackson,* 107 U. S. 478 (2 Sup. Ct. Rep. 814)."

As to the six-year statute of limitation, it, in our opinion, is no defense here. The predecessor in interest of the appellants, according to the evidence, took a part in misleading the respondents, his stepchildren, living with him most of the time, into the belief that the mortgage was still good, thus lulling them into inaction, and certain it is that they did not learn of the fraud, consisting of the satisfaction of the mortgage without any consideration whatever, until about, or

shortly after, the divorce proceedings between their mother and their stepfather, about fifteen months prior to the commencement of this action.

The statute of nonclaim, or failure to present a claim to the executor of the estate of Tom Kaperak within the period of time provided by the probate law, does not apply, because no personal deficiency judgment is sought against the estate.

Nor do we think there is any just claim in the defense that respondents are barred by laches. Appellants and their predecessor must be deemed to have known of the want of power in the trustee to release the mortgage without consideration or authority of the beneficiaries, and it does not lie in their mouths to object that the respondents did not act sooner, or that the claim of respondents is a stale one, when asserted by respondents within the time limited by law for the commencement of an action after discovery of the fraud practiced upon them and no rights of third parties as *bona fide* purchasers have intervened to render inequitable the assertion of the lien of the original mortgage, other than Marie Winjun, whose rights are protected by the judgment entered.

Based on these conclusions, a majority of us are constrained to overrule the Department opinion and affirm the judgment appealed from. It is so ordered.

BEALS, C. J., MAIN, TOLMAN, MILLARD, and STEINERT, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent from so much of the prevailing opinion as affirms the judgment respecting the Chopeck heirs who attained majority more than six years prior to the institution of this action. The statute and our decisions governing the matter are set

out in the original opinion in 175 Wash. 123, 26 P. (2d) 1046, and are disregarded in this decision.

The judgment should be reversed as to them, and modified accordingly.

BLAKE and GERAGHTY, JJ., concur with HOLCOMB, J.