[No. 38352. En Banc. February 2, 1967.]

JAMES K. AMENDE, *Respondent and Cross-appellant,* v.
PIERCE COUNTY, *Appellant.*\*

*John G. McCutcheon* and *Donald F. Herron,* for appel-
lant.

*Williams, Lanza, Kastner & Gibbs, DeWitt Williams,* and
*Frank J. Owens,* for respondent and cross-appellant.

*Preston, Thorgrimson, Horowitz, Starin & Ellis* and *James
R. Ellis,* amici curiae.

WEAVER, J.—September 1, 1916, "Commercial Waterway
District No. 1 of the County of Pierce, State of Wash-
ington"[1] issued $172,000 of its 6 per cent coupon negotiable
 \*Reported in 423 P.2d 634.

---

[1]Pursuant to Laws of 1911 ch. 11, and to an election, the county
commissioners declared the organization of the district on December 14,
1914.

bearer bonds[2] having a face value of $500 per bond. They became due and delinquent September 1, 1926. Bonds Nos. 1 through 327 have been paid. Plaintiff is the owner of 10 of the bonds, Nos. 334 through 337 and Nos. 339 through 344. They had been purchased from the Trust Department of the National Bank of Washington, Tacoma, Mr. D. F. Haskell, in two lots, one August 5, 1959, the other August 12, 1959.[3]

June 16, 1921, "Hylebos Creek Diking District No. 1 of the County of Pierce of the State of Washington"[4] issued $93,000 of its 7 per cent coupon negotiable bearer bonds,[5] each in the denomination of $500. The bonds became due and delinquent June 30, 1926. Bonds Nos. 1 through 61 have been paid. Bonds Nos. 62 through 187, totaling $63,000, were purchased by plaintiff (or his father) from the National Bank of Washington, January 23, 1957.[6]

The commissioners of the waterway and diking districts were authorized by statute to levy an annual assessment upon the lands within the districts' boundaries sufficient to pay the bonds at maturity. The assessments were to be collected by the county treasurer and kept in a separate fund for the sole purpose of liquidating the bonds in accordance with the provisions of the statute. That this was done, at least to a limited extent, is illustrated by the fact that each district paid a portion of its bond issue as we have set forth above. The bonds were never the obligation of Pierce County.

Although not pertinent to the instant case, we note that prior to the maturity of the bonds in 1926, some of the assessments securing the diking district bonds were held

[2]The bonds were issued pursuant to Laws of 1911, ch. 11, § 35, as amended by Laws of 1913, ch. 46, § 7, p. 123.

[3]The purchase price was $95.

[4]Pursuant to Laws of 1895, ch. 117, p. 304, and an election held September 19, 1914, the county commissioners declared the organization of the district on September 21, 1914.

[5]The bonds were issued pursuant to Laws of 1895, ch. 117, § 29, et seq., p. 324, as amended by Laws of 1921, ch. 87, § 1.

[6]The purchase price was $630.

invalid and entire annual levies on certain properties for the bond fund were canceled by court action. Because of the invalidity of some assessments and the delinquency of others, there was not enough money in the bond funds in 1926 to pay the bonds when they matured. At this time, all bond assessments were past due and general taxes were delinquent on many of the properties.

Thereafter, the county foreclosed on certain properties in both districts. The records submitted show that the properties were foreclosed upon for general taxes, but none shows whether or not bond assessments were involved.

Some of the foreclosed properties were sold to private individuals and between 1940 and 1943 substantially all of the remaining properties were conveyed to the Port of Tacoma for development and subsequent sale or lease prior to January 1, 1944.

The latter conveyances were made pursuant to Laws of 1939, ch. 45, § 2, p. 131,[7] which provides:

> Any lands situate within any such industrial development district heretofore acquired or which may hereafter be acquired by the county wherein such port district is situated through foreclosure of tax liens may by majority vote of the county commissioners of such county, if they deem such lands to be chiefly valuable for industrial development purposes, be conveyed by the county to the port district. Such lands shall be held in trust by the port district and administered, improved, developed, leased and/or sold under the provisions of this act or any amendment thereof. Any moneys derived from the lease or sale of such lands shall be distributed as follows:
>
> (a) The expense incurred by the port district for the administration, improvement and development of said lands shall be returned to the general fund of the port district.
>
> (b) Any balance remaining shall be paid to the county in which the lands are located, to be paid, distributed and prorated to the various funds in the same manner as general taxes are paid and distributed during the year of such payment.

---

[7] Rem. Rev. Stat. (Sup.), § 9709-2; reenacted with slight change by Laws of 1955, ch. 73, § 5, p. 433, now appearing as RCW 53.25.050.

January 19, 1961, plaintiff commenced this action. The theory of plaintiff's action is stated in the prayer of his complaint:

WHEREFORE, plaintiff prays for the judgment and decree of the court as follows:

1. That defendant as statutory trustee for said districts and bondholders be required to account (except as to property sold by it prior to 1928) for all of the tax foreclosures which included assessments in either or both of said districts, such accounting to include:

(a) The amounts for which the taxes and assessments were foreclosed;

(b) The amounts of all subsequently accruing assessments in said districts;

(c) The amounts for which said properties were sold or where no sale was made, a description of the other disposition of such property.

2. That upon such accounting defendant be required to pay into the bond funds of said districts the amounts to which said funds are entitled from any cash sales of said properties, and also in the instances in which conveyances were made to the Port of Tacoma without consideration, the total amount of unpaid assessments included in said tax foreclosure sales or subsequently accruing together with interest thereon.

3. That upon payment into said bond funds as herein prayed for that said funds be ordered disbursed in payment of said bonds in numerical order.

During trial, plaintiff apparently broadened the scope of his claims for he assigns as error, on his cross-appeal, the failure of the court to enter proposed conclusions of law granting plaintiff judgment for $8,500, unpaid waterway district bonds, $5,000 of which were owned by him, and for $63,000 unpaid diking district bonds, with interest from January 1, 1944, to be paid into the bond funds of the districts and applied to payment of the bonds.

November 18, 1963, the court entered an interlocutory order requiring defendant to account (except as to property sold by it prior to 1928) for all of the tax foreclosures which included assessments in either or both of said districts, the accounting to include: (a) the amounts for which

the taxes and assessments were foreclosed; (b) the amount of all subsequently accrued assessments; and (c) the amounts for which the properties were sold, or where no sale was made, a description of other disposition of the properties.

Subsequently, the county filed an accounting which is admittedly incomplete because the county does not have now sufficient records available to comply with the order of court. LeeRoy Brown, chief accountant of the Pierce County Treasurer's Office, testified: "The older records, part of that time, are not available. We don't know where they are. We assume they were destroyed years ago."

Defendant contends that the bondholders' claims are barred (1) by failure to file a claim with the county pursuant to RCW 36.45.030; (2) by statutes of limitations; (3) by failure to join necessary parties, *i.e.*, the Districts and the Port of Tacoma; and (4) by laches.

After trial, the court entered its judgment and decree which directed defendant county to institute promptly, and expeditiously prosecute, legal proceedings for the *recovery of all land* within the diking and waterway districts *that had been acquired by the county in foreclosure proceedings and which was subsequently conveyed to the Port of Tacoma by Pierce County*. As the properties are recovered, the county is directed to offer them for sale as in the case of properties acquired by foreclosure proceedings.

The judgment further provides that the court will make additional orders concerning (1) the conduct of sales of the properties after their acquisition by the county from the Port of Tacoma; and (2) the distribution of the proceeds in order to protect the bondholders[8] and effect the payment of the unpaid bonds.

We glean two conclusions from colloquy between counsel and the bench. *First*, the trial court held that the statute of limitations "is a bar to those properties which were sold to *others than the Port District*." (Italics ours.) Parentheti-

---

[8] Plaintiff owns all of the unpaid bonds of the diking district and all of the unpaid bonds of the waterway district except seven $500 bonds, the owners of which are not identified.

cally, we point out that neither the Port of Tacoma nor the others to whom the districts conveyed property prior to January 1, 1944 are parties to this action. *Second,* the trial court concluded that RCW 36.45.010 which provides:

All claims for damages against any county must be presented before the board of county commissioners and filed with the clerk thereof *within ninety days from the date that the damage occurred or the injury was sustained.* (Italics ours.)

barred the entry of judgment for plaintiff in the sum of $8,500 (the amount of all unpaid bonds in the waterway district) and $63,000 (the amount of all unpaid bonds in the diking district) for it is admitted that no claim was ever filed with Pierce County.

A myriad of questions are raised by defendant's 25 and plaintiff's (cross-appellant's) 4 assignments of error. The answer to one question, however, we believe to be dispositive of this appeal and cross-appeal: Is plaintiff foreclosed by the doctrine of laches?

Plaintiff argues that the doctrine of laches does not apply to his action because the county stands in the position of trustee for the bondholders and is always liable to the trust for mismanagement or misappropriation of the funds or properties in the trustee. Perhaps it is an oversimplification, but if plaintiff's theory is sound, an action based upon ownership of the bonds could be maintained 75 years after the bonds matured as well as 35 years thereafter. We do not agree; public policy requires that private claims come to rest at some time.

We summarize the facts. The bonds in question were issued in 1916 and 1921 with a 1926 maturity date. Several lawsuits regarding the bonds occurred before their date of maturity, which suits are of course, a matter of public record. It was over 35 years from the date of these trials before the plaintiff filed the complaint in this cause. During this extended period the land in question was taken as tax title property in public foreclosure proceedings. There were conveyances to the Port of Tacoma by the county, pursuant to RCW 53.25.050, which conveyances, completed by 1943,

are also of public record. The bondholders did not act. Much of the land underwent extensive changes. From undeveloped tidelands, the land was transformed into an extensive industrial complex.

Interest of the bondholders was shown by the testimony of Mr. Brown, chief accountant, Pierce County Treasurer's Office, when he testified that inquiry had been made prior to 1953 concerning the status of the bonds, by Mr. Haskell, then holder of the bonds. In response to a question as to what he told Mr. Haskell upon his inquiries, Mr. Brown stated:

> Well, at one time, uh, he came into the office personally—that was after '53—but he came into the office personally and asked the usual question about it, the condition of the bond fund, how much cash we had available, and during the course of our conversation, *I told him then that even if we did have the money to pay the bonds, we felt we couldn't possibly pay them because there was a legal question as to whether or not there were defaulted bonds, or whether or not we had any legal right to pay them if we did have the money; we would feel it had to be resolved through court before we could possibly make any payment on them.* (Italics ours.)

When Mr. Brown was asked what directed him to the dates mentioned he stated:

> Well, going back that far, it's a little bit difficult, but Mr. Haskell, as I said, usually made a practice of calling probably once a year, possibly once every other year. In fact, he called prior to '53 even, inquiring as to the status of the funds, but this particular time he happened to come in to the office. Whether it was ever something else I don't know, but he stopped in to inquire about the bond funds.

Considering the foregoing, does laches apply?

The doctrine of laches has existed since the beginning of equity jurisdiction, independently of statutes of limitation. 21 C.J. *Laches, Stale Demands and Limitations* § 211. In *Thorsteinson v. Waters*, 65 Wn.2d 739, 747, 399 P.2d

510 (1965), the court quotes from 10 R.C.L. 396, as it appears in *Morris v. Hillman Inv. Co.*, 99 Wash. 276, 169 Pac. 837 (1918):

" 'Hence, it has been said, laches in legal significance, is not mere delay, but delay that works a disadvantage to another. So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law; but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. When a court sees negligence on the one side and injury therefrom on the other it is a ground for denial of relief.' "

Also from *Thorsteinson v. Waters, supra*:

The defense of laches is grounded upon the principle of equitable estoppel, which will not permit the late assertion of a right where other persons, by reason of the delay, will be injured by the assertion. *Young v. Jones*, 72 Wash. 277, 130 Pac. 90 (1913).

*McKnight v. Basilides*, 19 Wn.2d 391, 143 P.2d 307 (1943), contains a synopsis of the cases in Washington that had applied the doctrine of laches up to that time. The court points out that:

Mere delay, lapse of time, and acquiescence do not defeat the remedy unless so long continued that in a particular case its changed condition would make it inequitable to allow recovery. *Gray v. Reeves*, 69 Wash. 374, 125 Pac. 162; *State ex rel. Kubel v. Plummer*, 130 Wash. 135, 226 Pac. 273; *Reiner v. Clarke County*, 137 Wash. 194, 241 Pac. 973; *State ex rel. Hearty v. Mullin*, 198 Wash. 99, 87 P. (2d) 280.

"The doctrine of laches is grounded upon the principle of equitable estoppel, and before it can be applied there must be some special circumstance which would render the maintenance of the action inequitable." *Bowe v. Provident Loan Corp.*, 120 Wash. 574, 208 Pac. 22.

 The doctrine of laches as applied to the relationship of trustee and beneficiary is well stated in Restatement (Second), Trusts § 219, as follows:

(1) The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable.

(2) The beneficiary is not barred merely by lapse of time from enforcing the trust, but if the trustee repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the trust.

In the Comment on Subsection (1) the Restatement points out that:

In determining whether the beneficiary of a trust is precluded by laches from holding the trustee liable for breach of trust, the court will consider among others the following factors: (1) the length of time which has elapsed between the commission of the breach of trust and the bringing of suit; (2) whether the beneficiary knew or had reason to know of the breach of trust; (3) whether the beneficiary was under an incapacity; (4) whether the beneficiary's interest was presently enjoyable or enjoyable only in the future; (5) whether the beneficiary had complained of the breach of trust; (6) the reasons for the delay of the beneficiary in suing; (7) change of position by the trustee, including loss of rights against third persons; (8) the death of witnesses or parties; (9) hardship to the beneficiary if relief is not given; (10) hardship to the trustee if relief is given.

b. *Length of time necessary to bar beneficiary.* The length of time necessary to bar the beneficiary from holding the trustee liable for breach of trust depends upon the circumstances. In the absence of special circumstances the beneficiary is barred if the period of the Statute of Limitations applicable to actions at law in analogous situations has run.

In applying the doctrine of laches to the instant case, we consider the following: (1) the unavailability of old records; (2) the 35-year lapse of time from the date of maturity of the bonds until commencement of suit; (3) intervening rights of third parties in the land, *i.e.*, the Port of Tacoma and others; (4) knowledge that the county would not pay the bonds without a court fight and thus had

repudiated the trust; (5) the extensive change in the physical condition of the land.

It would be naive of us to find that plaintiff did not have knowledge of the infirmities attached to these bonds when he purchased them at least 31 years after maturity for slightly more than one cent on the dollar of their face value, not considering accumulated interest. We therefore conclude that it would be inequitable to allow recovery; hence, the action of plaintiff-respondent is barred by the doctrine of laches.

We find no merit in plaintiff's contention that we cannot consider the doctrine of laches because it was not specifically pleaded by name.

Rule of Pleading, Practice and Procedure 15(b) provides in part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.

This rule is to be liberally construed. *Burlingham-Meeker Co. v. Thomas*, 58 Wn.2d 79, 360 P.2d 1033, 3 Orland, Wash. Prac. 525.

In view of our conclusion, it is not necessary for us to consider the question of whether plaintiff's action is barred by the statute of limitations and by failure of bondholders to file a claim with Pierce County pursuant to RCW 36.45.010.

The judgment is reversed and the cause dismissed with prejudice.

FINLEY, C. J., HILL, DONWORTH, ROSELLINI, HUNTER, HAMILTON, and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.