[No. 1020-1. Division One—Panel 1. April 24, 1972.]

CLIFTON LAHUE et al., Respondents and Cross-appellants, v. KEYSTONE INVESTMENT COMPANY, et al., Appellants.

*Arthur R. Paulsen* and *Warren J. Daheim,* for appellants.

*Critchlow, Williams, Ryals & Schuster* and *Rembert Ryals,* for respondents.

HOROWITZ, C.J.—This appeal and cross-appeal principally concern a judgment in favor of Richland Hyatt House, Inc. and its stockholders entered by the trial court in a derivative stockholder's suit.

A number of parties are involved. We shall generally refer to plaintiff LaHue, the receiver for Richland Marina, Inc., as receiver; the coplaintiff stockholder, formerly Mrs. Opgenorth, as Mrs. Emerick; the defendants Keystone Investment Company, James Walker, Gordon Smith, and the respective wives of Walker and Smith, as defendants Keystone; and the defendants H. Glen Scott and C. Robert Suess and their respective wives, together with their partnership known as Scott and Suess, as defendants Scott.

The pertinent facts as the court found or could have found them are these.

For a number of years Richland Marina, Inc., based in Richland, Washington, through its president, Charles H. Opgenorth, promoted the financing and construction of a motel in Richland. Many persons invested their money in the promotion, and many persons became unpaid corporate creditors. The principal asset of Richland Marina, Inc. consisted of a motel site lease from the City of Richland. The promotion proved unsuccessful. Richland Marina, Inc. became, and for a number of years was, actually insolvent.

By early 1964, defendant Scott, a building contractor, became seriously interested in the promotion. A plan, very general in terms, was worked out for the financing, construction and management of the proposed motel that would include provision for the creditors and investors of Richland Marina, Inc. The plan contemplated that a new corporation would be formed unencumbered by the debts of Richland Marina, Inc. or the claims of its stockholders. Richland Marina, Inc. would transfer its motel site lease to the new corporation. The new corporation, together with the limited partnership shortly referred to, would enter into a motel construction contract with Scott and Suess Construction Company. The corporation would also continue with a motel management contract with Hyatt Corpo-

ration of America for the management of the motel upon construction. Northwest Mortgage Co. would enter into a commitment with the new corporation for permanent mortgage financing upon the security of the transferred motel lease, to become performable upon the completion of construction. Approximately $300,000 in new capital funds would be raised for the new corporation to make the plan workable.

The creditors and investors of Richland Marina, Inc. would be provided for as follows. A limited partnership, to be known as Richland Hyatt House Associates, would be formed with the new corporation as its managing partner. The partnership would raise substantial funds with a view to ultimately owning the motel. To raise the needed partnership funds, limited partnership units would be sold or exchanged to the extent necessary for the interests of the creditors or investors in Richland Marina, Inc. The raising of the funds, both by the limited partnership and by the new corporation, was to be the basic responsibility of Mr. Opgenorth.

The plan was then implemented. About April 1, 1965, Richland Hyatt House, Inc., the new corporation, was formed. Its initial paid-in capital was $500, consisting of 250 shares of nonpar stock issued for $2 per share. Ultimately the total shares issued were divided among its first named directors: 146 shares to Scott, 23 shares to his accountant, Wesley H. Seelye, and 81 shares to Charles H. Opgenorth. The arrangement was temporary pending the raising of additional share capital. It was not expected that the shares would have any substantial value, the issuance of such shares being but a first step in the consummation of an overall plan. Scott later became president and Seelye secretary-treasurer of the new corporation.

On June 21, 1965, Richland Marina, Inc. transferred its motel site lease to the new corporation for a nominal consideration. No express agreement was entered into concerning the reassignment of the lease back to Richland Marina, Inc. in the event that the plan as above described failed or

was abandoned. In June 1965 the new corporation and the limited partnership entered into a motel construction contract with the defendants Scott and Suess conditioned upon the contractor determining that the new corporation had adequate financing. The new corporation continued with a preincorporation contract dated January 6, 1965, with Hyatt Corporation of America for the management of the future motel. On June 25, 1965, Northwest Mortgage, Inc. entered into a long-term conditional mortgage commitment with the new corporation to lend the latter $1,050,000 upon completion of the motel. In June 1965 a certificate of limited partnership, to be known as Richland Hyatt House Associates, was executed by six leaders in the motel promotion enterprise. However, nothing further was done to activate the limited partnership, nor was any new capital raised either by the new corporation or by the limited partnership.

Mr. Opgenorth died in July 1965. His death proved fatal to the success of the enterprise. Scott was left in control of the new corporation. Meetings were held both by Richland Hyatt House, Inc. and by Richland Marina, Inc. in the remaining months of 1965 to salvage what could be salvaged from the unfulfilled plans. In addition, a so-called "rump group" of persons interested in the motel promotion met to make further plans. Mrs. Emerick (then Mrs. Opgenorth) was elected a director and officer both of Richland Marina, Inc. and Richland Hyatt House, Inc.

Doubts began to be raised concerning the possible success of the motel construction enterprise. Scott became unhappy with the outlook and decided to leave. On December 23, 1965, he granted an option to J. Harlow Tucker to sell his 146 controlling shares, the option requiring payment to Scott of sums totaling $50,000 and requiring the optionee to

exert his best efforts toward the advancement of the programs now under way by Richland Hyatt House, Inc., and Richland Hyatt House Associates, in the best interests of those persons who have contributed to and participated in those programs to date.

Tucker knew of the Richland Hyatt House, Inc. contracts and of the plans to take care of the creditors and investors in Richland Marina, Inc. Tucker worked with the defendant Kroetch in effecting a sale of the Scott option to Keystone Investment Company. Keystone Investment Company ultimately paid Scott approximately $37,000 of the $50,000 consideration promised. The court found that in making the purchase Keystone Investment Company "received the same subject to the obligations that Scott has assumed, i.e., they took his position."

On January 6, 1966, Scott resigned as a director and officer of Richland Hyatt House, Inc. On January 12, 1966, at the corporation's annual stockholder's meeting, formal notice of the sale, but not of the purchase price, was given to remaining stockholders, officers and directors present. There was some evidence that prior to the meeting one of the principal creditors and investors in Richland Marina, Inc. had been notified of the promised purchase price. At any rate, no objection was made to the sale. The persons informed of the sale believed that the success of the motel project was better assured by the entry of the new stockholder.

At the January 12, 1966, meeting, Walker of Keystone Investment Company and six others were elected directors. Later the same day, the board of directors elected Walker as president and Smith (also of Keystone) as secretary of the corporation. The court found:

> Not later than January 12, 1966, the officers of Richland Marina, Inc. and its principal creditors were fully informed that Scott had terminated his interest in and activities with Richland Hyatt House, Inc. They also knew or should have known that the stock had been sold for a considerable sum of money.

Following the election of Messrs. Walker and Smith, Kroetch, in some way not altogether clear, became active in the affairs of the corporation. Neither Walker, Smith, nor Kroetch took further steps to implement the original plan looking to the construction of the motel for the benefit of

the creditors and investors of Richland Marina, Inc. Instead, Walker, Smith and Kroetch negotiated with Mr. Zurelli of the Merit Company, a contractor, to sell to the latter Richland Hyatt House, Inc.'s only remaining asset, namely the motel site lease, for $113,000. A sale required the consent of the lessor, City of Richland. In exchange for support in obtaining such consent from the lessor, there was testimony that Walker and Kroetch promised certain creditors or investors in Richland Marina, Inc.—but not Richland Marina, Inc. itself—that the purchase price would be used to pay the claims of Marina creditors. Whether and to what extent the requested support was given by each of the persons to whom the promises were made is not altogether clear. At any rate, the sale was consummated with the necessary consent, the $113,000 was paid and deposited in the corporation's bank account over which Walker and Smith had check-signing authority.

By March 24, 1966, Messrs. Walker and Smith improperly paid or caused to be paid, or personally misappropriated out of the $113,000 received, the sum of $65,650. Whether Kroetch had knowledge of all the payments improperly made is not clear. In any case, knowledge of these payments was withheld from the other officers, directors and stockholders of Richland Hyatt House, Inc., as well as from the creditors and investors whose claims Messrs. Walker and Smith had promised to pay out of the $113,000 received.

About March 20, 1966, Richland Hyatt House, Inc. held a director's meeting. Messrs. Walker and Smith resigned and stated that Kroetch would thenceforth handle matters. They obtained a purported release of liability in connection with their resignation. At that time there was approximately $45,000 of corporate funds on deposit, presumably to the credit of the corporation. The testimony is in dispute as to whether Kroetch was elected president at the March 20 meeting, or whether he was elected at a subsequent meeting on April 29 or 30, 1966. At the March 20 meeting, it was assumed by the stockholders and directors present, except

for Walker and Smith, and possibly Kroetch, that the $113,000 was intact except for the sum of $10,008.95 previously and properly paid to Sime Construction Co. Keystone transferred its interest in the enterprise, including 146 shares of stock, to Kroetch. The date of this transfer does not appear. However, in some way not disclosed by the record, Kroetch paid to Walker for Keystone $10,000 in corporate funds, apparently for the transfer by Keystone of its interests in the enterprise. At any rate, Kroetch was a stockholder by the time of the April 29 or 30 meeting. At that meeting he was elected president of the corporation. The $10,000 paid to Keystone is included in the $65,650 judgment against defendants Keystone.

Between March 20 and a corporate meeting of April 29 or April 30, 1966, unsuccessful efforts were made by various directors and officers of Richland Hyatt House, Inc. and by an influential creditor and investor in Richland Marina, Inc. to obtain an accounting of the $113,000. No accounting could be obtained either from Walker, who had theretofore resigned, or from Kroetch. No further corporate meetings were held after the April 29 or 30 corporate meeting. In June or July 1966, Kroetch disappeared with the balance of the corporate funds in the approximate amount of $35,000. Richland Hyatt House, Inc. brought no action thereafter to recover the $113,000. Subsequent to Kroetch's disappearance, Richland Hyatt House, Inc. for all practical purposes ceased to function as a corporation.

On February 18, 1967, plaintiff LaHue was appointed receiver for Richland Marina, Inc., an insolvent corporation. The receiver reported that some $90,000 in investments had been made in Richland Marina, Inc. stock and the corporation was indebted in excess of $147,000.

On February 10, 1969, plaintiff receiver and Mrs. Emerick filed a verified complaint against defendants. The receiver sued to recover $250,000 in damages, claiming that the consideration for the June 1965 assignment of the motel site lease to Richland Hyatt House, Inc. was the assumption by the latter of Richland Marina, Inc. claims of creditors.

Coplaintiff Mrs. Emerick joined with the receiver in his complaint and amended complaint, but in the amended complaint she sought to recover $113,000 from the defendants in a class suit, derivative in nature, for the benefit of Richland Hyatt House, Inc. and the stockholders and persons claiming an interest in that corporation. The corporation, although named as a party defendant in the pleadings, was not served with process. The court found that by the time suit was filed "Richland Hyatt House, Inc. for all practical purposes had ceased to exist." Defendant Kroetch was not served with process and did not appear. In due course the court found against the receiver's contention as to assumption of creditors' claims and dismissed his action, but entered judgment in favor of Richland Hyatt House, Inc. and its stockholders in the sum of $65,650. This appeal and cross-appeal followed.

Defendants Keystone, the receiver and Mrs. Emerick are each dissatisfied with the judgment entered on various grounds. Thus, each contends that certain findings are not supported by substantial evidence. Much evidence, such as that relating to the claimed promise by Richland Hyatt House, Inc. to Richland Marina, Inc. to assume Richland Marina, Inc. creditors' claims, is disputed or otherwise unsatisfactory or insufficient. We are satisfied that substantial evidence supports the court's findings, and we uphold them. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). *See Harrison v. Puga,* 4 Wn. App. 52, 480 P.2d 247 (1971). We do not consider defendants Keystone's contention that the judgment improperly included interest from March 24, 1966 on the amounts adjudged owing. That contention is not argued in appellant's brief and must be deemed abandoned. CAROA 42; *Spino v. Department of Labor & Indus.,* 1 Wn. App. 730, 463 P.2d 256 (1969).

The remaining questions deal with conclusions of law properly to be drawn from the findings and undisputed evidence. Plaintiffs, each of whom cross-appeals, contend that the judgment should be larger. Defendants Keystone

contend that the judgment against them is wholly invalid. Defendants Scott defend the judgment of dismissal in their favor. Upon consideration of the contentions raised, we reverse the judgment in favor of the stockholders of Richland Hyatt House, Inc. in their individual capacities, but, except for a minor addition to the amount, affirm the judgment in all other respects.

Defendants Keystone contend the judgment must be reversed both because Mrs. Emerick did not prove that she was a stockholder and because Richland Hyatt House, Inc., although an indispensable party, was not served with process and did not otherwise appear. These and related contentions require a legal analysis of Mrs. Emerick's suit.

Mrs. Emerick's suit purports to be a representative and derivative stockholder's class suit alleging breaches by the defendants of various fiduciary obligations. The amended complaint, however, does not comply with the derivative stockholder's suit requirements of CR 23.1. Thus, there is a failure to allege that Mrs. Emerick was a stockholder at the time of the breaches; or of demand by her upon and refusal by Richland Hyatt House, Inc. to sue defendants; or that such a demand by her would have been futile. Shortly before trial, defendants Keystone moved that Mrs. Emerick's suit be dismissed because Richland Hyatt House, Inc. had not been served with process. The requirements of CR 23.1 were not mentioned. Defendants Keystone took the position that Mrs. Emerick's suit was a derivative stockholder's suit and that, accordingly, Richland Hyatt House, Inc. was an indispensable party. The court agreed and orally dismissed Mrs. Emerick's suit. However, no formal order was entered. The trial proceeded. While the trial was in progress, defendants Keystone renewed their motion to dismiss. The court denied the motion stating that, if the evidence showed that the defendants were liable, the pleadings might have to be amended to conform to the proof. Near the end of the trial, the trial judge reversed his original ruling dismissing Mrs. Emerick's suit. He gave the defendants Keystone an opportunity to offer any further

evidence they might have omitted in reliance upon the court's original order of dismissal. Defendants Keystone, however, offered no additional evidence.

By the time of the court's announcement, the undisputed evidence showed that Mrs. Emerick had a presumptive community interest in her late husband's shares of stock in Richland Hyatt House, Inc. This presumptive interest existed at the time the stock was acquired; when the claimed breaches of fiduciary obligation took place; and when Mrs. Emerick filed the instant suit more than 3½ years after her husband's death. The undisputed evidence further showed that the corporation had no assets and had ceased functioning since Kroetch disappeared with the balance of the corporate funds in June or July 1966. The court stated in finding 20 that by the time suit below was commenced Richland Hyatt House, Inc. "for all practical purposes had ceased to exist." The undisputed evidence also showed that the corporation at no time instituted suit against the defendants to recover for the wrongs complained of; did not intervene in the instant suit to assert its rights as permitted under CR 24; and that a demand by Mrs. Emerick for intracorporate relief would have been futile either because the corporation had no funds with which to sue or had ceased to function; or with the knowledge of the instant suit was satisfied to have Mrs. Emerick do the suing.

 The amended complaint on which the case was tried must be considered as amended to conform to the proof of the matters above summarized even without formal motion to amend. CR 15(b), (c); *Amende v. Pierce County,* 70 Wn.2d 391, 423 P.2d 634 (1967); *Mading v. McPhaden,* 50 Wn.2d 48, 308 P.2d 963 (1957). *See Bradford Audio Corp. v. Pious,* 392 F.2d 67 (2d Cir. 1968).

 The findings, notwithstanding the undisputed evidence, do not expressly state the existence of the facts required to be alleged by CR 23.1. They do, nevertheless, include the express finding 20 above quoted. However, it is unnecessary to remand the case for the purpose of making findings on the undisputed facts when we ourselves can do

so. *State v. LaRue*, 5 Wn. App. 299, 487 P.2d 255 (1971); *Lambert v. Lambert*, 66 Wn.2d 503, 403 P.2d 664 (1965); *Cogswell v. Cogswell*, 50 Wn.2d 597, 601, 313 P.2d 364 (1957); *State v. Knudsen*, 154 Wash. 87, 280 P. 922 (1929). It is true that we have heretofore held that the absence of a finding upon a material fact, the burden to prove which is upon the plaintiff, is in effect a finding that no such fact exists. *McCutcheon v. Brownfield*, 2 Wn. App. 348, 467 P.2d 868 (1970). However, this principle is inapplicable, at least for purposes of affirming the judgment, if there is uncontradicted evidence which the appellate court can hold requires a finding to the contrary.

■■ We must consider whether Mrs. Emerick's presumptive community interest in Richland Hyatt House, Inc. stock gives her standing to sue. It does not appear whether Mrs. Emerick was ever a stockholder of record. RCW 23A.08.460, effective July 1, 1967, and added by the Laws of 1965, ch. 53, § 49, p. 1094, requires the stockholder to be one of record. However, CR 23.1, likewise effective July 1, 1967, requires only that the plaintiff be a stockholder at the time of the misappropriation. CR 23.1 is so comprehensive that it may reasonably be said to disclose an intention that its provisions supersede the more limited requirements of the earlier RCW 23A.08.460. Because RCW 23A.08.460 was enacted before the adoption of CR 23.1, the rule supersedes the statute, at least to the extent inconsistent. RCW 2.04.200. The fact that both the statute and the rule have the same effective dates is immaterial in the presence of other indications that the rule, at least to the extent inconsistent, supersedes the earlier statute.

■ Most cases hold that one may be a stockholder for stockholder derivative suit purposes if he holds a mere equitable interest in the stock. Fed. R. Civ. P. 23.1, the source of CR 23.1, has been so construed. 3B J. Moore, *Federal Practice* ¶ 23.1.17 at 152 (2d ed. 1969). *See also* 13 W. Fletcher, *Private Corporations* § 5976 (perm. ed. rev. vol. 1970). In this state a surviving widow's one-half community interest in stock held in her husband's name prior

to his death, whether or not formally set aside to her in the course of probate of her husband's estate, is a one-half vested beneficial interest in those shares. *In re Estate of Patton,* 6 Wn. App. 464, 494 P.2d 238 (1972); *In re Estate of Towey,* 22 Wn.2d 212, 155 P.2d 273 (1945); *Poe v. Seaborn,* 282 U.S. 101, 75 L. Ed. 239, 51 S. Ct. 58 (1930).

If the stockholder requirement contained in CR 23.1, following Fed. R. Civ. P. 23.1, is satisfied by equitable ownership in the stock, we see no reason for giving any less protection to a surviving spouse's vested community interest in that stock. She is not merely a legatee, but an owner of that one-half interest. Neither the corporation that is to receive the judgment, nor the defendants who are protected against later suits on the same cause of action (as will be later pointed out), are prejudiced by permitting such protection. We accordingly uphold Mrs. Emerick's right to sue upon the basis of her community interest in the Richland Hyatt House, Inc. stock.

■ Defendants Keystone contend the judgment entered must be reversed because Richland Hyatt House, Inc. was not served with process. Ordinarily, a corporation must sue in its own name to protect its corporate rights. Under exceptional circumstances, one or more of its corporate stockholders may sue to enforce the corporate right by way of a derivative suit. Such a suit is one in equity to enforce a corporate right which the corporation fails, is unable, or refuses to assert by court action. The required allegations in the complaint are those set forth in CR 23.1. *See Goodwin v. Castleton,* 19 Wn.2d 748, 144 P.2d 725, 150 A.L.R. 859 (1944); 3B J. Moore, Federal Practice ¶ 23.1.16 *et seq.* (2d ed. 1969); 13 W. Fletcher, Private Corporations § 6003 *et seq.* (perm. ed. rev. vol. 1970).

Because a corporate cause of action is asserted in a derivative stockholder's suit, there is no reason in principle why the relief should be confined to a class suit. CR 23.1 does not expressly confine derivative relief to class suits. Case law is not altogether clear on this matter. Note, *Shareholder Derivative Suits; Are They Class Actions?,* 42 Iowa

L. Rev. 568 (1957). Nevertheless, as stated in *Duncan v. National Tea Co.,* 14 Ill. App. 2d 280, 144 N.E.2d 771 (1957) at 295:

> Because . . . the stockholder-plaintiff is enforcing a right belonging to the corporation, and a recovery on its behalf would benefit all stockholders, except those who had actively participated in the wrong, an allegation that the suit is brought on behalf of those "similarly situated" is not material to the representative capacity of the plaintiff.

It is true that Mrs. Emerick's suit purports to be a class suit on behalf of herself and other stockholders and persons claiming an interest in the corporation. However, Mrs. Emerick did not obtain compliance with class suit requirements of CR 23, particularly subdivision (c). There was no direct testimony that the suit was brought as a class suit. However, the court below had a right to treat it as a derivative suit brought by a single stockholder. No party claims error based on the failure to comply with class suit requirements. We therefore treat the judgment here as it was treated by the court below and by the parties.

Joinder of the corporation is not always essential. The necessity of joinder is determined by "pragmatic considerations." *See Provident Tradesmen's Bank & Trust Co. v. Patterson,* 390 U.S. 102, 19 L. Ed. 2d 936, 88 S. Ct. 733 (1968). If nonjoinder does not prejudice the rights of the absent corporation sought to be benefited, or the rights of the defendants against whom the corporate cause of action is asserted, judgment in favor of the absent corporation in the stockholder's derivative suit may be upheld. Thus, joinder is excused in the case of corporations that have ceased to exist, or have liquidated or are virtually liquidated. *Weinert v. Kinkel,* 296 N.Y. 151, 71 N.E.2d 445, 172 A.L.R. 688 (1947); *Striker v. Chesler,* 39 Del. Ch. 193, 161 A.2d 576 (1960); *Gardiner v. Automatic Arms Co.,* 275 F. 697 (N.D. N.Y. 1921); *McClean v. Bradley,* 282 F. 1011 (Dist. Ct. Ohio 1922). *Cf. Guerrino v. Ohio Cas. Ins. Co.,* 423 F.2d 419 (3d Cir. 1970).

CR 19 deals with excuses for nonjoinder of an absent

party. The corresponding Fed. R. Civ. P. 19 has been applied to stockholder derivative suits. *See Liman v. Midland Bank Ltd.,* 309 F. Supp. 163 (S.D. N.Y. 1970). Under CR 19, excuse for nonjoinder of the corporation whose cause of action is asserted by the stockholder cannot be said to be confined to the instances above mentioned if it appears that the absent or the objecting party will not be prejudiced. The undisputed evidence here shows no prejudice either to Richland Hyatt House, Inc. or to the defendants Keystone. First, Richland Hyatt House, Inc. has shown no interest since the summer of 1966 in suing the defendants. It did not intervene in the cause below, although its remaining officers and directors knew of the trial and many testified as witnesses. Indeed, the corporation had no funds with which to finance the litigation whether by independent suit or by intervention. By the time of the trial the corporation for all practical purposes had ceased to exist. *See Crumlish's Adm'r v. Shenandoah Valley R.R.,* 28 W. Va. 623 (1886). *Cf.* 13 W. Fletcher, Private Corporations § 5965 (perm. ed. rev. vol. 1970). Second, the judgment has been entered in favor of the corporation after hearing had on claims to recover the full $113,000. Third, defendants are entitled to the same protection against a later suit by the corporation or its stockholders that they would have had if the corporation were a party to the litigation and bound by the judgment. Should Richland Hyatt House, Inc., or its stockholders suing derivatively, later seek recovery on the cause of action on which the corporation has received judgment, defendants Keystone will have two defenses. The first is the 3-year statute of limitations on the original cause of action for breach of fiduciary obligation which occurred by March 24, 1966. RCW 4.16.080. Secondly, the defense of res judicata is available. The stockholders in a derivative suit stand in the shoes of the corporation and are subject to the same defenses as are available against the corporation. *See Davis v. Harrison,* 25 Wn.2d 1, 167 P.2d 1015 (1946). Hence, a later suing stockholder, as in the case of the corporation, would be subject to the defenses of the

statute of limitations and of res judicata. *See Liken v. Shaffer,* 64 F. Supp. 432, 443-44 (N.D. Iowa 1946); *Fahrenwald v. Spokane Sav. Bank,* 179 Wash. 61, 35 P.2d 1117 (1934); *Duncan v. National Tea Co., supra; Kaufmann v. Annuity Realty Co.,* 301 Mo. 638, 256 S.W. 792 (1923); 13 W. Fletcher, Private Corporations § 5959 (perm. ed. rev. vol. 1970).

Were we to reverse the judgment in favor of Richland Hyatt House, Inc. because of nonjoinder, the defendants Keystone could successfully plead the statute of limitations as a defense to any action by the corporation against them for the misappropriations occurring by March 24, 1966. The loss of such a remedy is not consistent with the requirements of equity and good conscience which we may take into account as provided by CR 19(b). Defendants Keystone should be protected only against prejudice from nonjoinder. Accordingly, we uphold the judgment below in favor of Richland Hyatt House, Inc. notwithstanding the corporation was not served with process.

Defendants Keystone contend that judgment in favor of the stockholders individually is improper. We agree. A stockholder's derivative suit, sometimes referred to as a representative and derivative suit, to enforce a corporate cause of action, is not for the individual benefit of the stockholder. It is established that both the cause of action and judgment thereon belong to the corporation. *Liman v. Midland Bank Ltd., supra; Liken v. Shaffer, supra. See Goodwin v. Castleton,* 19 Wn.2d 748, 144 P.2d 725, 150 A.L.R. 859 (1944); *Moore v. Los Lugos Gold Mines,* 172 Wash. 570, 21 P.2d 253 (1933). *See generally* 13 W. Fletcher, Private Corporations §§ 5953, 5994 (perm. ed. rev. vol. 1970); Comment, *Corporations: Disregard of the Corporate Entity for the Benefit of Shareholders,* 1963 Duke L. J. 722; Note, *Distinguishing Between Direct and Derivative Shareholder Suits,* 110 U. Pa. L. Rev. 1147 (1962); 19 Am. Jur. 2d *Corporations* § 528 (1965). A direct recovery to the stockholders may be permitted under exceptional circumstances, notwithstanding that such recovery amounts to a

forced distribution of corporate assets to the stockholders. *See* 13 W. Fletcher, Private Corporations § 6028 (perm. ed. rev. vol. 1970); Note, *Shareholders' Right to Direct Recovery in Derivative Suits*, 17 Wyo. L.J. 208 (1963). However, when there are third party rights of higher priority involved, such as corporate creditors or claimants, then a judgment in favor of the stockholders would prejudice such rights and, accordingly, be improper. *Cf. Joyce v. Congdon*, 114 Wash. 239, 195 P. 29 (1921); *Sale v. Ambler*, 335 Pa. 165, 6 A.2d 519 (1939).

There may well be third party rights whose priority is higher than that of the stockholders. We should not foreclose third parties not before the court, nor for that matter should we foreclose the plaintiffs from asserting whatever rights they may have against the corporation. Our determination here is only as between the plaintiffs and the defendants. Our holding in Mrs. Emerick's derivative stockholder's suit that Richland Hyatt House, Inc. was not required to be joined should not be misunderstood. We have made no determination in any suit involving the rights of the plaintiffs against Richland Hyatt House, Inc. concerning the necessity of joinder in such case; nor have we made a determination as between these parties concerning the existence of such rights whether asserted by the receiver, Mrs. Emerick individually, by a third person not represented by the receiver, or for that matter, the rights, if any, by the receiver against a stockholder. Except as to the last case mentioned, one or more of the rights or claims if established may be superior to the rights of stockholders. Accordingly, the judgment in favor of the stockholders, which would have the effect of impairing such superior rights, should not now be entered.

Mrs. Emerick, below and on cross-appeal, has asked that the $113,000 received by the corporation, less $10,008.95 she now concedes was properly paid, go to the creditors and investors of Richland Marina, Inc. To grant her request, however, would in effect substitute her wishes as to distribution for those of the corporate directors. The requested

relief is therefore unavailable here. That the requested relief is unavailable, however, does not deprive her of the right to carry out her wishes voluntarily. Thus, she may assign to the receiver, for the benefit of the creditors and investors he represents, any distributive share of the judgment proceeds she may receive as a stockholder. It is unnecessary to now determine whether the receiver has any rights against a nonassigning stockholder.

Cross-appealing plaintiffs contend that the judgment in the sum of $65,650 is inadequate. First, they claim that an arithmetical mistake requires that the judgment be increased by $679.69. This figure is apparently arrived at by adding up the items found to be proper in findings 17 to 19, and subtracting that total from $113,000. If this is done, however, the correct figure is $559.69 rather than $679.69. Exhibit 7, which is the Richland Hyatt House, Inc. cash journal kept by Smith, shows that on March 24, 1966, the sum of $559.69 was held in trust for Richland Hyatt House, Inc. Walker testified that this sum was not turned over to the corporation when defendants Keystone left that corporation. He testified "The money is still there." St. 521-22. He further suggested that subsequently accruing bank interest may have been added. The judgment below inadvertently failed to include the sums in the judgment. Accordingly, the judgment below should be increased by the principal sum of $559.69, plus legal interest thereon from March 24, 1966, together with earned interest added, plus legal interest thereon from the date any earned interest became payable. Total interest shall be provable on remand.

Plaintiffs further contend that the amount of the judgment should be increased from $65,650 to $113,000, less $10,008.95 properly paid. They first contend the evidence does not support the court's finding that $1,031.36 in miscellaneous minor expenditures and $750 paid for rent were properly paid. In our opinion, substantial evidence supports the court's findings on these items.

More particularly, plaintiffs contend defendants Keystone are liable for the $35,000 embezzled by Kroetch

in June or July 1966. It is claimed that when defendants Keystone turned over the balance of corporate funds to Kroetch upon their withdrawal from Richland Hyatt House, Inc., they then knew that Kroetch had no intention of honoring the corporate obligation to pay Richland Marina, Inc. creditors. They further argue that Kroetch was thereby placed in a position of committing the embezzlement involved. The well-settled rule is that a person who knowingly assists another in the commission of a tort, or who knowingly assists another in violating his fiduciary or trust obligation, is liable for losses proximately caused thereby. *See Locke v. Andrasko*, 178 Wash. 145, 153, 34 P.2d 444 (1934); Restatement (Second) of Trusts §§ 321, comment *d*, 326 (1959); Restatement of Torts § 874, comment *c* (1939); 37 Am. Jur. 2d *Fraud and Deceit* § 305 (1968); 37 C.J.S. *Fraud* § 61 (1943).

In the instant case the trial court found against the existence of the assumption of Richland Marina, Inc. indebtedness. In addition, the court may well have impliedly found that there was a failure to prove the required knowledge of prospective wrongdoing or a proximate cause relationship between the defendants' conduct and Kroetch's later embezzlement. Evidence concerning defendants Keystone's knowledge at best rests on circumstantial evidence. The court could have held that the evidence was not enough to prove the required knowledge. With respect to defendants Keystone's sale of Richland Hyatt House, Inc. stock in exchange for corporate funds, the question as to whether the sale was the proximate cause of the embezzlement raises a factual issue. The court may well have believed that defendants Keystone had a right to assume, after the sale when they left corporate funds in the corporate treasury, that the remaining officers and directors, and their successors, would properly control those funds. Indeed, a director's meeting of Richland Hyatt House, Inc. was held on April 29 or 30, 1966. At that meeting the directors elected Kroetch president. That election, with knowledge of the corporation, put Kroetch in a position to control corporate

funds, a control he ultimately used to embezzle the funds. Defendants Keystone did nothing subsequent to March 24, 1966, to aid or assist Kroetch in the embezzlement committed in June or July 1966. The court may properly have believed that the election of Kroetch as president by the remaining and unchanged board of directors constituted an intervening cause immunizing the defendants Keystone from responsibility for Kroetch's later embezzlement. We uphold the trial court's refusal to hold the defendants Keystone liable for the embezzled sum. Our holding that the court did not err applies to both plaintiffs.

 Defendants further contend that the defendants Scott are liable for breach of fiduciary obligation to Richland Hyatt House, Inc. and to the plaintiffs. The trial court declined to so hold. He held, however, that plaintiffs' claim for relief in any case is barred by the 3-year statute of limitations. The court found:

> Not later than January 12, 1966, the officers of Richland Marina, Inc. and its principal creditors were fully informed that Scott had terminated his interest in and activities with Richland Hyatt House Inc. They also knew or should have known that the stock had been sold for a considerable sum of money.

Finding 14. We have heretofore held that substantial evidence supports this finding. The quoted finding is a sufficient basis for applying the 3-year statute of limitations. RCW 4.16.080(4); *Viewcrest Cooperative Ass'n v. Deer*, 70 Wn.2d 290, 422 P.2d 832 (1967); *Peste v. Peste*, 1 Wn. App. 19, 459 P.2d 70 (1969).

The contentions disposed of are controlling. It is, therefore, unnecessary to consider the others.

Judgment in favor of the stockholders of Richland Hyatt House, Inc. is reversed with directions to dismiss their individual claims as stockholders and to increase the judgment in the principal sum of $559.69 and earned interest added thereon, together with legal interest, in the manner in this

opinion already stated. In all other respects, the judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied May 24, 1972.

Review denied by Supreme Court August 21, 1972.